## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | | |
|---|---|---|
| **ALFRED J. GANT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 07-CV-2095** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION

This case is before the court for ruling following an evidentiary hearing regarding the Motion under § 2255 to Vacate, Set Aside or Correct Sentence (#1) filed by Petitioner, Alfred J. Gant. Following this court's careful review of the evidence presented at the hearing and the arguments of the parties, Petitioner's Motion (#1) is DENIED.

### BACKGROUND

### I. PETITIONER'S CRIMINAL CASE

Petitioner was charged by indictment in this court in Case No. 03-CR-20043. On November 19, 2003, Petitioner was found guilty, following a jury trial, of the offense of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). A presentence investigation report (PSR) was prepared prior to sentencing. The PSR stated that Petitioner was an Armed Career Criminal pursuant to 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4 because he had four prior convictions for either a violent felony or a serious drug offense. The PSR stated that Petitioner's sentencing guideline range was 188 to 235 months of imprisonment. On April 14, 2004, this court held a sentencing hearing. Petitioner objected to his classification as an Armed Career Criminal, contending that the classification violated the Eighth Amendment's prohibition against cruel and unusual punishment. This court overruled the objection and adopted the PSR's findings. This court

then sentenced Petitioner to 188 months of imprisonment.

Petitioner filed a Notice of Appeal and claimed, on appeal, that this court erred in two of its evidentiary rulings and in refusing to give a requested jury instruction. On January 12, 2005, while Petitioner's appeal was under consideration, the United States Supreme Court decided United States v. Booker, 543 U.S. 220 (2005). On February 1, 2005, the Seventh Circuit rejected Petitioner's arguments and affirmed his conviction. United States v. Gant, 396 F.3d 906 (7th Cir. 2005). Petitioner filed a petition for rehearing, raising for the first time an argument under Booker. The Seventh Circuit denied the petition for rehearing on March 10, 2005.

## II.  FIRST MOTION UNDER § 2255 & RELATED PROCEEDINGS

On May 18, 2005, Petitioner filed a Motion under 28 U.S.C. § 2255 in Case No. 05-CV-5119. Petitioner claimed he did not have the necessary convictions to qualify him for sentencing as an Armed Career Criminal because his civil rights had been restored on two of the underlying convictions, his 1970 conviction and his 1974 conviction. Petitioner also claimed that the Government failed to prove to a jury beyond a reasonable doubt the existence of the prior convictions. Petitioner did not attach any supporting documentation regarding the restoration of his civil rights.

On July 18, 2005, this court denied the Motion, concluding that Petitioner's claims were procedurally defaulted because they were not raised on direct appeal. Petitioner filed a motion to reconsider and asked this court to allow him to amend his motion. This court granted Petitioner's request and directed him to file an amended Motion under § 2255. In his amended Motion, Petitioner claimed his trial counsel was ineffective for failing to investigate and challenge the prior convictions used to classify him as an Armed Career Criminal. Petitioner also claimed that his

2

counsel was ineffective for failing to raise a timely <u>Booker</u> issue during his direct appeal.  Petitioner further claimed that this court, rather than a jury, impermissibly made the factual determination of the existence of his prior convictions.  Again, Petitioner did not attach supporting documentation regarding the restoration of his civil rights.

On March 28, 2006, this court entered an Opinion ruling on Petitioner's amended Motion under § 2255.  This court rejected Petitioner's claim that his trial counsel provided ineffective assistance of counsel for failing to investigate or challenge his classification as an Armed Career Criminal and also rejected Petitioner's claim that this court engaged in impermissible fact-finding regarding Petitioner's prior convictions.  This court concluded, however, that Petitioner's appellate counsel had been ineffective for failing to raise a timely <u>Booker</u> challenge to his sentence.  This court therefore ordered that Petitioner would be resentenced.  This court appointed new counsel, Harvey Welch, to represent Petitioner at the resentencing hearing.

On August 25, 2006, this court conducted a resentencing hearing and lowered Petitioner's sentence to 180 months of imprisonment.  This was the statutory mandatory minimum sentence under 18 U.S.C. § 924(e).  Following resentencing, Petitioner did not appeal the amended judgment.

On December 4, 2006, Petitioner filed a pro se Notice of Appeal in Case No. 05-CV-2119 which stated that he was appealing from the judgment entered on August 25, 2006.  This court denied Petitioner's request for a certificate of appealability.   On March 19, 2007, the Seventh Circuit dismissed Petitioner's appeal as untimely.  The Seventh Circuit stated that the judgment in Case No. 05-CV-2119 was entered on March 28, 2006, so that the Notice of Appeal was over six months late.  The Seventh Circuit stated that the appeal was also late as to the judgment entered on August 25,  2006, because a notice of appeal as to that judgment needed to be filed within 10 days

3

of the judgment.  On April 3, 2007, Petitioner filed a pro se Motion to Extend the Time for Filing

the Notice of Appeal.  Petitioner indicated that he wanted to appeal from this court's denial of two

of the claims raised in his amended Motion under § 2255.  Petitioner stated that, following the

resentencing on August 25, 2006, his counsel "made it clear he would file a notice of appeal in order

to preserve petitioner's appeal rights."  Petitioner also claimed that he could not file a notice of

appeal because he was held in transit and not returned to federal prison for more than 60 days

following his resentencing.

On April 11, 2007, this court entered an Opinion which denied Petitioner's Motion to Extend

Time.  This court stated:

> In this case, Petitioner is seeking to appeal this court's
> Opinion entered on March 28, 2006, in which this court rejected two
> of his three arguments regarding relief under 28 U.S.C. § 2255.  This
> was a final Order of this court and terminated this case.  Therefore,
> Petitioner's notice of appeal had to be filed within 60 days from the
> entry of that Opinion.  See Fed. R. App. P. 4(a)(1)(B) ("[w]hen the
> United States or its officer or agency is a party, the notice of appeal
> may be filed by any party within 60 days after the judgment or order
> appealed from is entered.").  Thus, Petitioner's time for filing his
> notice of appeal expired May 29, 2006.  In addition, a motion for
> extension of time to file a notice of appeal had to be filed within 30
> days of that date.  See Fed. R. App. P. 4(a)(5)(A)(i).  This time
> expired by June 28, 2006.

4

This court notes that, on August 25, 2006, this court entered an Order in this case setting out the sentence imposed in Petitioner's criminal case. However, the Order was entered solely to facilitate the ease of obtaining information in this case. That Order did nothing to extend the time for filing a notice of appeal, which had in any case already expired long before the entry of the Order. Petitioner's Motion to Extend Time for Filing his Notice of Appeal was filed much too late and must be denied. This court additionally notes that the excuses Petitioner has given for failing to file a timely notice of appeal are clearly inadequate to show "excusable neglect or good cause." The time for filing an appeal from this court's March 28, 2006, Opinion expired long before Mr. Welch purportedly told him that Mr. Welch would be filing a notice of appeal (which presumably would have been filed in the criminal case, because Mr. Welch was appointed to represent Petitioner at sentencing in the criminal case). Further, Petitioner clearly was capable of filing documents with the court wherever he was housed.

### III. SECOND MOTION UNDER § 2255

On May 10, 2007, Petitioner filed a new Motion under § 2255 to Vacate, Set Aside or Correct Sentence (#1) in this case. Petitioner raised three grounds for relief. He argued that, on resentencing, this court was without jurisdiction to sentence him as an Armed Career Criminal because he does not have the required prior convictions. He also argued that his counsel was

5

ineffective at resentencing because he failed to investigate his prior convictions.  In addition,

Petitioner argued that his counsel was ineffective for failing to file a notice of appeal when he asked

counsel to do so.  In support of his first argument, Petitioner stated that, in January 2007, he received

certified copies of his original master file from the Illinois Department of Corrections (IDOC).

Petitioner argued that these documents showed that all of his rights had been restored following the

successful completion of his sentence and term of supervision on two of his prior convictions.

Petitioner argued that this left only two prior felonies so he did not qualify for enhancement as an

Armed Career Criminal.

Petitioner attached documents in support of this argument.  The first document was on IDOC

letterhead and stated that copies were made from the master file of Alfred Jones Gant, A-56066,

Date of Birth 07-31-1946, Discharged 10-13-1995, from the East Moline Correctional Center.  The

documents included a "Parole or Mandatory Supervised Release Agreement," which was dated

February 24, 1995, and was signed by Petitioner.  This agreement set out rules of conduct governing

adult parolees and mandatory supervised releasees and included the statement that "You shall not

own, possess, use, sell, or have under your control any firearms or other dangerous weapons."  The

documents also included a document entitled "Discharge from Parole/Mandatory Supervised

Release" which stated that Petitioner had completed the maximum of his sentence on 2-24-95 and

also stated "we are pleased to inform you of the restoration of all your rights."

On June 11, 2007, the Government filed its Response to Petitioner's Second Motion under

28 U.S.C. § 2255 (#3).  On June 14, 2007, this court entered an Opinion (#4) which dismissed

Petitioner's Motion under § 2255 for lack of jurisdiction.  Petitioner filed a Notice of Appeal (#7).

On November 17, 2008, the Government filed an Unopposed Motion to Remand Case with

6

the Seventh Circuit Court of Appeals.  The Government stated that the case should be remanded because Petitioner, in his Motion, complained of new errors that ensued as a result of his previous, successful collateral attack.  The Seventh Circuit entered an Order (#19) on December 5, 2008 and granted the Government's Unopposed Motion to Remand Case.  The Seventh Circuit agreed that, pursuant to Shepeck v. United States, 150 F.3d 800, 800-01 (7th Cir. 1998), Petitioner could properly proceed with his Motion under § 2255 because it raised new errors that ensued as a result of his previous, successful collateral attack.  The Seventh Circuit therefore vacated this court's judgment and remanded the case for further proceedings.

## A.  PROCEEDINGS IN THIS CASE

Following remand, this court reopened the case and ordered the Government to file a Response to Petitioner's Motion (#1).  On February 5, 2009, this court appointed Attorney Joseph P. Chamley to represent Petitioner.

On February 21, 2009, the Government filed its Response (#25).  In its Response (#25), the Government recognized that, if a defendant directs his attorney to file a notice of appeal following his sentencing and the attorney fails to do so, it is per se ineffective assistance of counsel.  See Kafo v. United States, 467 F.3d 1063, 1066 (7th Cir. 2006).  The Government therefore conceded that an evidentiary hearing was necessary as to that issue.  In its Response, the Government also noted that, although Petitioner had challenged his status as an Armed Career Criminal on prior occasions, he provided this court with supporting documentation from the IDOC for the first time in his second Motion under § 2255.  The Government pointed out that the documents Petitioner provided to this court generally related to the completion or discharge of his criminal sentence.  The Government argued that the only document related to the "restoration" of civil rights was unauthenticated,

unsigned and undated.  The Government argued that Petitioner presented no evidence to establish that it was a valid IDOC document.  The Government pointed out that the document contained differing type format, part of which appeared strikingly similar to the type format used to prepare Petitioner's pro se Motion.  The Government therefore argued that there was no credible factual issue as to whether Petitioner's civil rights were in fact restored or whether his counsel was ineffective in failing to challenge Petitioner's Armed Career Criminal status at his resentencing.  The Government stated, however, that since an evidentiary hearing was necessary as to Petitioner's claim that his resentencing counsel failed to perfect a direct appeal, an inquiry could be made at the hearing as to whether Petitioner knowingly presented a valid or forged document to the court in support of his Motion.

On May 18, 2009, this court entered an Opinion (#26) in which it agreed with the Government that an evidentiary hearing was necessary.  This court therefore scheduled an evidentiary hearing for September 9, 2009.

On June 19, 2009, Petitioner, through counsel, filed a Motion to Substitute Exhibit for Previously Filed Exhibit (#28).  In the Motion, Petitioner's counsel stated that Petitioner recently "brought to his current counsel's attention" that the one-page exhibit attached to his Motion under § 2255, which stated that all of his rights had been restored, was "not a photocopy" but rather was "a manual reproduction of the original." Petitioner's counsel stated that, according to Petitioner, the manual reproduction was made because no photocopier was available to Petitioner while incarcerated.  Petitioner's counsel asked to substitute a photocopy of the appropriate exhibit.  This court granted the Motion (#28) on July 20, 2009.  The substituted exhibit was addressed to "Alfred J. Grant," was undated, and included different language regarding the restoration of Petitioner's

8

rights.  It also was not signed.

On August 18, 2009, Petitioner's counsel filed a Memorandum in Support of Petitioner's Motion under § 2255 (#29).  In the Memorandum, Petitioner's counsel recognized that, once the Government meets the burden of establishing at least three prior felonies for Armed Career Criminal Act qualification, the defendant must prove, by a preponderance of the evidence, that a conviction cannot be used under the Armed Career Criminal Act.  United States v. Vitrano, 405 F.3d 506, 509 (7th Cir. 2005).  Petitioner's counsel noted that Petitioner's PSR listed four prior convictions as qualifying convictions under 18 U.S.C. § 924(e)(2)(A) or (B): (1) 1970 - Battery; Armed Violence; (2) 1974 - Aggravated Battery; (3) 1978 - Aggravated Battery; and (4) 1985 -Possession of a Controlled Substance with Intent to Deliver/Manufacture.  Petitioner's counsel argued that the evidence showed that Petitioner's civil rights were restored as to two of these convictions. Petitioner's counsel attached, as Exhibit A, a document related to Petitioner's 1970 conviction which included a notation "Restoration of Citizenship Rights Applied."  Petitioner's counsel also attached the letter addressed to "Alfred J. Grant" this court had previously allowed Petitioner's counsel to substitute, which counsel argued was related to Petitioner's 1985 conviction.  Petitioner's counsel also attached a sample of the letter routinely sent by the IDOC which had identical wording regarding the restoration of rights.  Petitioner's counsel argued that, because Petitioner had only two qualifying convictions, Petitioner's sentence of 180 months based upon his status as an Armed Career Criminal must not stand.

On September 9, 2009, the Government filed a Supplemental Response to Petitioner's Motion Under 28 U.S.C. § 2255 (#31).  The Government stated that it intended to show at the evidentiary hearing that Petitioner filed false documents with the court.  The Government also

argued that, even if the documents were considered valid, they were not sufficient because they were not sent to Petitioner by the IDOC and did not restore all of his rights.

## B.  EVIDENTIARY HEARING

At the evidentiary hearing held on September 9, 2009, Harvey Welch was the first witness to testify.  Attorney Welch testified that he represented Petitioner at his resentencing hearing on August 25, 2006.  A transcript from the sentencing hearing was admitted into evidence.  Welch testified that he did not remember discussing the issue of the restoration of civil rights with Petitioner.  He testified that, after the resentencing hearing, he had a brief discussion with Petitioner about his right to appeal.  Welch testified:

> I believe I told him that based on my understanding of what the Seventh Circuit had ordered for his resentencing, and based on the results of the resentencing hearing, the sentence obtained, I told him it was my understanding that he had gotten all the relief that he was entitled to at the sentencing hearing and that there were really no issues to appeal.[1]

Welch testified that it was his understanding that Petitioner agreed and understood that there were no issues to appeal.  Welch said he believed Petitioner did not direct him to file a notice of appeal.

Petitioner then testified.  He stated that, prior to his resentencing, he did discuss with Welch the fact that he had his rights restored as to his prior convictions.  He stated that he did not have "the paper" at that time.  He testified that he thought Welch would "take it from there."  Petitioner testified that he told Welch at the resentencing hearing that he wanted "to appeal them two motions."

---

[1]  Welch later clarified that the resentencing was held based upon an order of this court rather than an order from the Seventh Circuit.

Petitioner testified that he did not realize that Welch did not appeal the case until later so that, when he filed a notice of appeal, it was too late.

Petitioner testified that he received a letter which stated that his rights had been restored in 2001.  He identified a letter, which was admitted into evidence at the hearing as Exhibit P7, as the letter he received in 2001.  This letter had the same language as the letter this court had allowed Petitioner's counsel to substitute as an exhibit to Petitioner's Motion under § 2255, although the typeface was larger.  The letter admitted into evidence as Exhibit P7 also was addressed to "Alfred J. Grant" and was undated, but included a signature.

Petitioner testified that Ruby Rodriguez read the letter and told him that his rights had been restored.  Petitioner testified that Rodriguez told him that he could vote.  He testified that he thought that the letter meant that he had all his rights restored and he could do "most anything that [he] wanted to do."  Petitioner testified that he thought his rights were restored as to all of his convictions.  He testified that he registered to vote after he received the letter but did not actually vote.

During cross examination, Petitioner explained that Rodriguez took a copy of the letter he received in 2001 to the parole office in Champaign County and had a woman there verify the letter and sign it.  This was the letter admitted into evidence as Exhibit P7.  Petitioner testified that the letter he received in 2001 was not signed.  Petitioner stated that the letter his counsel had been allowed to substitute, Exhibit B, was the letter he received from the IDOC.  Petitioner testified, "[t]his is the only thing I got that restores my rights."

The next witness was Lou Crabtree.  She testified that she is employed at the Champaign Parole Office as the office manager.  She identified a letter admitted into evidence as Exhibit P3 as

a standard discharge letter sent to every prisoner when he is discharged from parole.  She testified that the computer generates a letter for each person discharged from parole within 24 hours.  The date on each letter is the date it left the computer.  Crabtree said that each letter is signed by her supervisor, Darren Cooper, or by her if Cooper is not there.  Crabtree testified that it was her signature on Exhibit P7, but she did not recall Rodriguez bringing the letter to her for a signature.

Darren Cooper testified that he is the Parole Supervisor for the Champaign Parole Office.  He testified that he has been with the Department of Corrections for 25 years in different capacities.  Cooper testified that part of the day-to-day operations of his office involved the Offender Tracking System, which houses all the information for offenders within the Department of Corrections, current and past.  Cooper testified that the letter introduced into evidence as Exhibit P3 was the release of discharge letter that is generated when a person has completed his or her parole term.  Cooper testified that the letters are printed each morning with his daily reports.  Cooper testified that the letters are dated and are not generated prior to the completion of parole.

Ruby Rodriguez testified that she and Petitioner have two children together, aged 33 and 43.  She identified Exhibit P7 as looking like the paper Petitioner received after he got off parole.  Rodriguez testified that he received it and brought it to her in 1999 or 2000, before she registered him to vote in 2002.  Rodriguez testified that she took the letter admitted into evidence as Exhibit P7 to the Parole Office and Ms. Crabtree signed it and gave it back to her.

The Government called Kenneth Tupy as a witness.  He testified that he is the chief legal counsel for the Illinois Prisoner Review Board.  He testified that the document related to Petitioner's 1970 conviction, admitted into evidence as Government's Exhibit 1, was the face sheet the Prisoner Review Board puts on all inmate files.  Tupy testified that the document was an internal record of

12

the Illinois Prisoner Review Board, which is not sent to the inmate.  Tupy testified that the notation

"restoration of citizenship rights applied" referred to the rights that are restored through Illinois

statutes, such as the right to vote. Tupy testified that inmates released from parole also have the right

to serve on a jury.  When asked whether the document would ever be sent to an inmate to provide

the inmate with notice of restoration of any rights, Tupy answered, "Absolutely not."

The Government then called Kevin Heard.  Heard testified that he worked for the Illinois

Department of Corrections in Springfield as an information systems analyst.  Heard identified the

letter admitted as Exhibit P3 as a discharge letter from parole or mandatory supervised release.

Heard testified that the document was created in 1992 and has undergone very little revision since

that time.  He testified that the document comes from the IDOC's computer system and is generated

by the computer.  Heard said that a date was added to the letters on September 7, 2000, so that, prior

to 2000, no date was on the letters.  Also, on March 5, 2004, the reference to the right to vote was

removed from the letters.  Heard testified that the spacing on the discharge letters is distinctive and

there is always extra space where the facility name is inserted.  Heard stated that there is also an

additional space in the second paragraph of the letter in the line including the words "authority

determines."  Heard testified that the additional space was programmed there by the original

programmer in 1992 and has remained in place as a means to help ensure that documents generated

by the system are reasonably identifiable.  Heard testified that the letter is not generated until the

offender is discharged from parole, or mandatory supervised release, and that is the date put in the

body of the letter. Heard explained that an offender would not receive the letter before his parole

was discharged.

Heard testified that he had reviewed Petitioner's computer records associated with his

13

incarcerations.  Heard stated that the records showed that Petitioner's last period of incarceration ended on February 24, 1995, but his parole did not conclude until October 1995.  Heard testified that the system put in place in 1992 should have generated a letter for Petitioner in October 1995.  Heard testified that the system does not provide a record of whether the letter was sent or received.  Heard testified that both the letter Petitioner attached to his second Motion under § 2255, Exhibit B, and the letter admitted into evidence as Exhibit P7 were not produced by the IDOC.  He noted that Exhibit P7 did not have the distinctive spacing included in the letters produced by the IDOC.  Heard also testified that a letter produced by the IDOC would not have included the date Petitioner was released from prison, February 24, 1995, but would have included the date he was released from parole.

This court continued the evidentiary hearing to September 29, 2009, and additional testimony from Darren Cooper was presented on that date.  On October 16, 2009, Petitioner, through counsel, filed his proposed Findings of Fact and Conclusions of Law (#40).  On November 23, 2009, the Government filed its Response to Petitioner's Proposed Findings of Fact and Conclusions of Law (#45) and, on December 3, 2009, Petitioner filed his Reply (#46).

## ANALYSIS

This court first notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary situations.  Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), citing Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993).  Accordingly, a petitioner may avail himself of relief under § 2255 only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice."  Boyer v. United States,

55 F.3d 296, 298 (7th Cir. 1995).[2]

Petitioner has essentially raised two issues in his second Motion under § 2255.  He claims

that his counsel appointed to represent him at his resentencing hearing was ineffective for failing

to challenge his status as an Armed Career Criminal, based upon the fact that his civil rights were

restored as to his prior convictions, and he also claims that his counsel failed to file a notice of

appeal after being directed to do so.  This court agrees with the Government that there is no merit

to Petitioner's claims.

## I.  ARMED CAREER CRIMINAL

The Armed Career Criminal Act, 18 U.S.C. § 924(e), requires a mandatory minimum

sentence of 15 years for anyone convicted under 18 U.S.C. § 922(g) who has at least three prior

convictions that are considered either a "violent felony" or a "serious drug offense."  United States

v. Gillaum, 372 F.3d 848, 853 (7th Cir. 2004); see also United States v. Williams, 128 F.3d 1128,

1134 (7th Cir. 1997).   An exception to § 924(e) provides that the Government may not use a prior

conviction to enhance a sentence if the sentencing jurisdiction as to that conviction has restored the

defendant's civil rights.   Williams, 128 F.3d at 1134, citing 18 U.S.C. § 921(a)(20).   Section

921(a)(20)(B) provides, in pertinent part:

> Any conviction which has been expunged, or set aside or for which
>
> a person has been pardoned or has had civil rights restored shall not
>
> be considered a conviction for purposes of this chapter, unless such
>
> pardon, expungement, or restoration of civil rights expressly provides

---

[2]  This court rejects Petitioner's argument that this court should apply the "rule of lenity" because Petitioner provided no authority indicating that the "rule of lenity" can be applicable when ruling on a Motion under § 2255.

that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20)(B).

On September 10, 2009, the day after the evidentiary hearing in this case, the Seventh Circuit decided Buchmeier v. United States, 581 F.3d 561 (7th Cir. 2009).  In Buchmeier, the defendant filed a Motion under § 2255 and claimed that his counsel was ineffective for failing to challenge his status as an Armed Career Criminal.  Buchmeier had been sentenced to a term of 188 months after it was determined that he was subject to a mandatory minimum sentence of 180 months under the Armed Career Criminal Act based upon the fact that he had eight prior convictions of burglary, a qualifying offense.  Buchmeier, 581 F.3d at 563.  The Seventh Circuit noted that, "[w]hen his state terms expired, and he was released from all supervision, he received from the [IDOC] a notice (applicable to all eight burglaries)."  The letter stated:

> We have been advised by the field services office of the Stateville Correctional Center that you have completed the maximum of your sentence as of 02/09/1994.  On this date, your obligation to the department ceases.

> We are pleased to inform you of the restoration of your right to vote and to hold offices created under the constitution of the state of Illinois.  You also have the right to restoration of licenses granted to you under the authority of the state of Illinois if such license was revoked solely as a result of your conviction, unless the licensing authority determines that such restoration would not be in the public

16

interest.[3]

<u>Buchmeier</u>, 581 F.3d at 564.  The defendant argued that this notice was a restoration of his civil

rights and, because it did not provide that he "may not ship, transport, possess, or receive firearms,"

none of the eight burglaries could be considered a qualifying conviction for purposes of the Armed

Career Criminal Act.

      The Seventh Circuit agreed.  The court first noted that § 921(a)(20) does not state which civil

rights, if restored, cause a state conviction not to count, but that it concluded in <u>Williams</u> that three

civil rights matter: "the right to vote, to hold office, and to serve on juries."  <u>Buchmeier</u>, 581 F.3d

at 564, <u>citing Williams</u>, 128 F.3d at 1134. The court stated "[i]f these are restored, then a conviction

does not carry federal fire-arms disabilities or support a § 924(e) enhancement 'unless such pardon,

expungement, or restoration of civil rights expressly provides that the person may not ship,

transport, possess, or receive firearms.'" <u>Buchmeier</u>, 581 F.3d at 564.  The court then noted that the

document that Buchmeier received mentioned two of the three civil rights, but was silent about jury

service.  <u>Buchmeier</u>, 581 F.3d at 564.  The court determined, however, that there was no need to

notify a defendant that a given civil right has been restored unless it was first taken away and the

right to serve on juries "is not suspended-though as a practical matter it can't be exercised while a

person is in prison."  <u>Buchmeier</u>, 581 F.3d at 564-65.  Therefore, the notice Buchmeier received did

not mention his right to serve on juries because he had never lost that right.  <u>Buchmeier</u>, 581 F.3d

at 565.

      Following a lengthy discussion, the Seventh Circuit reaffirmed its prior decision in <u>United

States v. Erwin</u>, 902 F.2d 510 (7th Cir. 1990), stating that "when the state does send a document

---

[3]  The Seventh Circuit stated that this was a "poorly written document."  <u>Buchmeier</u>, 581
F.3d at 567.

saying that civil rights have been restored, there is a potential for misunderstanding unless the document 'expressly provides that the person may not ship, transport, possess, or receive firearms.'" Buchmeier, 581 F.3d at 565-67. The court then concluded that "because the state sent Buchmeier a document stating that his principal civil rights have been restored while neglecting to mention the continuing firearms disability, the final sentence of § 921(a)(20) means that his burglary convictions do not count for federal purposes" so that he was entitled to be resentenced. Buchmeier, 581 F.3d at 567.

This court agrees with the Government that, even applying the Seventh Circuit's decision in Buchmeier to the facts of this case, there are many problems with Petitioner's claim. First, based upon the evidence, it is clear that Petitioner did not present this court with the actual letter which was sent to him by the IDOC. The letters Petitioner introduced into evidence at the evidentiary hearing did not have the distinctive spacing the documents generated by the IDOC have.[4] In addition, the letters Petitioner introduced into evidence included the date Petitioner was released from prison, not the date he was released from parole, were addressed to "Alfred J. Grant" and copied the language currently used by the IDOC rather than the language in use from the time he was released from parole in 1995 until 2004, when reference to the right to vote was removed from the letter.[5] Moreover, this court concludes that the testimony from Petitioner and Rodriguez regarding his receipt of the letter was contradictory and was not convincing or credible. Therefore,

---

[4] Petitioner argued that Heard testified that the distinctive spacing did not become a part of the letter until 2004. This was a misreading of Heard's testimony. Heard testified that the distinctive spacing has been part of the letter since it was created in 1992.

[5] The letter Petitioner introduced into evidence would not seem to fall under the holding of Buchmeier because it did not include a statement regarding the restoration of the right to vote. The letter in Buchmeier included language regarding both the restoration of the right to vote and the right to hold office.

Petitioner failed to present credible evidence that he received a letter from the IDOC which referenced the restoration of his rights.

This court notes, however, that Heard testified that he had no reason to doubt that a letter was produced after Petitioner was released from parole. He also indicated that the letter was most likely sent to Petitioner. Based upon the evidence presented at the evidentiary hearing, this letter would have had the same language as the letter quoted in <u>Buchmeier</u>, which was sent in 1994. This court concludes, however, that even if this court gives Petitioner the benefit of the doubt and assumes that he received a letter from the IDOC after he was released from parole in 1995 and the letter was identical to the letter referred to in <u>Buchmeier</u>, Petitioner still cannot prevail. The most this "assumed" letter could have done was restore Petitioner's civil rights as to his most recent conviction. The PSR shows, and it is undisputed, that Petitioner's sentence, including parole, had been discharged as to his 1970, 1974, and 1978 convictions prior to his 1985 conviction. Therefore, any letter sent to Petitioner referred only to his discharge from the sentence imposed following his 1985 conviction and did not apply to Petitioner's three earlier convictions. There is no evidence that Petitioner was sent anything regarding the restoration of his civil rights following his discharge from parole as to those three convictions.[6] Petitioner has apparently abandoned his argument that the document from the Illinois Prisoner Review Board restored his civil rights as to his 1970 conviction. In any case, the evidence showed that this document was not sent to Petitioner and could not have advised him as to the restoration of any civil rights. There is no potential for misunderstanding if the state does not send a document saying that civil rights have been restored. <u>See</u> <u>Buchmeier</u>, 581 F.3d at 567.

_____

[6] Heard testified that the IDOC did not start generating the letters until 1992.

Petitioner has argued that the letter sent by the IDOC following his release from parole in 1995 restored his civil rights as to "all" of his convictions.[7]  Petitioner makes this argument based upon Buchmeier, where the court stated that the notice sent applied to all eight of Buchmeier's burglary convictions.  Petitioner does not explain why the letter in this case applied to all of his convictions, and this court agrees with the Government that this is not the case.  The letter related only to the 1985 conviction and the completion of his parole as to that conviction.  This court concludes that the Government is correct that there is no authority to support a broad proposition that a single IDOC letter concerning a single conviction is sufficient to invalidate all prior Illinois convictions no matter their number or when such convictions occurred.  Therefore, even giving Petitioner the benefit of generous assumptions in this case, he still had three qualifying convictions and was properly sentenced under the Armed Career Criminal Act.

To succeed on a claim of ineffective assistance of counsel, a prisoner must prove (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result.  Wyatt v. United States, 574 F.3d 455, 457-58 (7th Cir. 2009), citing Strickland v. Washington, 466 U.S. 668, 687-88, 693 (1984).  Regarding the prejudice prong, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Petitioner did not show that he suffered prejudice because, since the issue lacks merit, there is no reasonable probability that the proceedings would have been different if his counsel raised the issue at resentencing.

## II.  NOTICE OF APPEAL

---

[7]  This court notes that Petitioner originally claimed that his civil rights were restored as to his 1970 and 1974 convictions, then later claimed that his civil rights were restored as to his 1970 and 1985 convictions, and now claims that his civil rights have been restored as to "all" of his convictions.  Petitioner's claims in this case have been something of a "moving target."

Petitioner claims that his counsel, Harvey Welch, was per se ineffective for failing to file a Notice of Appeal following his resentencing.  This court agrees with the Government that there is no merit to this argument.

First of all, this court found Petitioner's testimony regarding his request that a notice of appeal be filed to be unconvincing and not credible.  Attorney Welch testified, credibly, that he explained to Petitioner that there were no issues to appeal and that he believed Petitioner understood and agreed.  Welch also testified that he believed that Petitioner did not direct him to file a notice of appeal.  Petitioner has argued that the transcript of the sentencing hearing shows otherwise.  This court does not agree.  While there was some discussion regarding an appeal and the fact that Petitioner did not want to waive any issues, the discussion related to the two issues raised in Petitioner's first Motion under § 2255 which this court rejected.  Attorney Welch, however, was appointed to represent Petitioner solely for the resentencing hearing in his criminal case and there was no discussion regarding an appeal from the sentence imposed at resentencing, which was the mandatory minimum sentence.  This court concludes that Petitioner did not show that he directed his counsel to file a notice of appeal, so this claim fails.  See Davis v. United States, 2009 WL 1606900, at *5 (S.D. Ill. 2009).

IT IS THEREFORE ORDERED THAT Petitioner's Motion under § 2255 to Vacate, Set Aside or Correct Sentence (#1) is DENIED.

ENTERED this 21st  day of December, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE